[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Barbara Kalas, d/b/a Clinton Press of Tolland, sues the defendant, Edward Cook, executor of the estate of Adelma Simmons. On October 19, 2000, the court conducted the trial of this matter.
The plaintiff alleges in her complaint that she and Simmons, who operated Caprilands Herb Farm (Caprilands), had a long standing, oral agreement whereby the plaintiff printed books, booklets, brochures, pamphlets, and other materials of that sort used by Caprilands; that pursuant to this agreement the plaintiff delivered quantities of this material to Caprilands; and that the estate has failed to pay for the materials delivered.
The estate denies delinquent payment of this account and interposes CT Page 13069 special defenses based on various statutes of limitations, payment, and the lack of a written contract.
The court finds the following facts. The plaintiff has used Clinton Press for decades to provide it with the written materials described above which Caprilands sold or distributed to its customers. No written contract ever memorialized this arrangement. The plaintiff would supply materials based on previous experience and seasonal fluctuations, and occasionally Caprilands would make special orders. Often these materials were delivered to Caprilands routinely without specific request for delivery. The plaintiff never charged Caprilands until the printed material was delivered. Once delivered, the plaintiff would request payment by way of invoices. Capriland's payments were applied by the plaintiff as received to the oldest, unpaid invoice.
Space to store these materials properly was limited at Caprilands, so Simmons and the plaintiff also agreed the materials printed for Caprilands would remain stored at the plaintiffs printshop until delivery was needed. Again, Caprilands incurred no charges for these stored materials but was only billed after delivery.
In 1991, the town of Tolland acquired the plaintiffs land for the purpose of constructing multifamily housing units thereon. For some time, the town allowed the plaintiff to continue to reside and run her printing business on the property under a lease agreement. But by early 1997, the town notified the plaintiff that she and her business had to vacate the property by the end of that year. Being over seventy years old, the plaintiff decided to cease operations rather than relocate.
The plaintiff spoke to Simmons regarding this development. They agreed that Caprilands would take delivery on an accelerated basis of all the material printed for it and stored at the printshop. Simmons directed Caprilands employee, Jack Lee, to proceed to transport the stored material to Caprilands whenever he was available to do so. Lee carried out this directive by going to the plaintiffs printshop from time to time. The plaintiff also brought material whenever she visited Caprilands. This accelerated delivery process peaked from August through October 1997.
In September 1997, Simmons, who was ninety-three years of age, experienced serious deterioration of her physical health. On December 3, 1997, she died. During a will contest, a temporary administrator of her estate was appointed. Eventually, the will was admitted to probate, and the defendant was appointed executor.
The plaintiff submitted a claim against the estate for the unpaid CT Page 13070 deliveries to Caprilands. These deliveries covered the period from February 12, 1997 to December 11, 1997. The last two deliveries occurred on December 4 and December 11, 1997, after Simmons' death. The amount owed by Caprilands to the plaintiff for those deliveries totals $24,599.38. The defendant refuses to pay this sum.
The court concludes that the plaintiff has proven, by a preponderance of the evidence, that the oral agreements between the plaintiff and Simmons obligate her estate to pay for the materials delivered to Caprilands from February 12 to December 11, 1997, and that these bills remain unpaid. Consequently, the court finds that the estate owes the plaintiff $24,599.38 on this account.
As to the defendant's first special defense, the defendant contends this action is barred by the three years limitation contained in General Statutes § 52-581 which governs oral contracts generally. In the present case, the plaintiffs cause of action accrued when the invoices remained unpaid. The earliest unpaid invoice pertains to a February 12, 1997, delivery of materials. This suit began on October 9, 1999, well within that three year period. The statute of limitations set forth in § 52-581 is no barrier to this action.
Similarly, the six year statute of limitations for actions on account contained in General Statutes § 52-576 and the four year limitation under General Statutes § 42a-2-725 for sales contracts are unavailing to the defendant. Therefore, the second and fourth special defenses alleged under these statutes, respectively, also fails to prohibit this suit.
The third special defense alleges payment. The court finds that the defendant has failed to prove, by a preponderance of the evidence, that $21,187 in payments made by Caprilands to the plaintiffs in 1997 were for the deliveries for which the plaintiff now seeks remuneration. To the contrary, the court finds that the plaintiff has proven that that sum was paid for deliveries which predated those beginning February 12, 1997.
Finally, the defendant's fifth special defense claims that any agreements between the plaintiff and Simmons were invalid under General Statutes § 42a-1-206 because they were unwritten. Section 42a-1-206
(2) specifically excludes contracts for the sale of goods from the writing requirement. "Goods" are defined under General Statutes §42a-2-105 to mean "all things, including specially manufactured goods, which are movable." Clearly, the printed material delivered to Caprilands under the agreements between the plaintiff and Simmons were "goods", and, therefore, those agreements were exempt from the requirement of § 42a-2-106 that they be in writing. CT Page 13071
For these reasons, the court enters judgment for the plaintiff in the amount of $24,599.38. No interest is awarded under General Statutes § 37-3a because the death of Simmons made it understandably necessary for the executor of her estate to defer payment of these bills until a clear accounting and determination of responsibility could be made.
Sferrazza, J.